UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

| Present: The Honorable | Audrey B. Collins | | |
|---|---|---|---|
| Daphne Alex | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     RE: MOTION TO DISMISS COUNTERCLAIMS (In Chambers)

     Currently pending before the Court is a Motion to Dismiss Counterclaims, filed December 21, 2007 by Plaintiff/Counterdefendant Ticketmaster L.L.C. ("Ticketmaster").  Defendant/Counterclaimant Designer Tickets & Tours, Inc. ("DT&T") filed its opposition to the motion on January 29, 2008.  Ticketmaster's reply was filed February 11, 2008.  On March 7, 2008, the Court found this Motion appropriate for submission without oral argument and vacated the hearing set for March 10, 2008.  See Fed. R. Civ. P. 78(b); Local Rule 7-15.  Having considered the materials submitted by the parties and the case file, the Court hereby GRANTS the Motion.

**BACKGROUND**

     DT&T alleges that Ticketmaster sells tickets for entertainment and sports events through its website.  (DT&T's Counterclaim for Damages, Antitrust Violations, Injunctive and Declaratory Relief ("Counterclaim" or "CC"), ¶ 1.)  DT&T buys tickets from Ticketmaster's website (CC ¶ 4), and resells them to members of the public (CC ¶¶ 4, 14.)  Although it is not entirely clear from the Counterclaim, it appears that, in order to use Ticketmaster's website, a customer must agree to Ticketmaster's "Terms of Use," which DT&T claims include "prohibitions restricting resell [sic] of the tickets purchased and limiting the quantity of tickets to be purchased."  (CC ¶ 1.)

     On February 16, 2007, Ticketmaster filed suit against Doe Defendants for breach of contract, violation of the Computer Fraud and Abuse Act, Violation of California Penal Code § 502, and fraud.  After expedited discovery, Ticketmaster filed a First Amended Complaint naming Defendants DT&T, Kurt Unger, and Ken Solky (collectively, "Defendants"), claiming that they have "repeatedly and systematically employed automated devices to enter into and navigate through Ticketmaster's website and improperly procured thousands of tickets for the purpose of reselling them at a profit."  (First

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

Amended Complaint ("FAC") ¶ 4.)  Ticketmaster also alleged that Defendants "have assisted . . . other users of prohibited automated devices by designing, marketing and providing such automated devices and also providing ongoing assistance in the use of such devices to misuse Ticketmaster's website." (FAC ¶ 5.)  Based on these allegations, Ticketmaster asserted eight causes of action against Defendants: (1) breach of contract; (2) and (3) direct and indirect copyright infringement, 17 U.S.C. § 101, et seq.; (4) and (5) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (6) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (7) violation of California Penal Code § 502; and (8) fraud.

Defendants filed a motion to dismiss, which was denied on October 18, 2007.  After the motion was denied, DT&T filed its Counterclaim on November 8, 2007, asserting three causes of action under the Sherman Act, 15 U.S.C. §§ 1 and 2.  Ticketmaster now moves to dismiss all counterclaims.

**LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1356.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  Furthermore, the complaint must be read in the light most favorable to plaintiff.  Id.  However, the Court need not accept as true any unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.  Id.; Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

**DISCUSSION**

**I.      Tying (Sherman Act, Section 1)**

DT&T first claims that Ticketmaster engaged in a "tying arrangement," prohibited by Section 1 of the Sherman Act.  Ticketmaster has moved to dismiss, arguing that DT&T has completely failed to make out such a claim.  The Court agrees.  Absolutely fundamental to any tying claim is the existence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

two separate products or services. "A tying arrangement is a device used by a seller with market power in one product market to extend its market power to a distinct product market. . . . To accomplish this objective, the seller conditions the sale of one product (the tying product) *on the buyer's purchase of a second product (the tied product)*." Cascade Health Solutions v. PeaceHealth, __ F.3d __, 2008 WL 269506, *20 (9th Cir. Feb. 1, 2008) (emphasis added); Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1159 (9th Cir. 2003).

In its Counterclaim, DT&T identifies the "tying product" as Ticketmaster's "primary ticket distribution system," and the "tied product" as the "secondary ticket distribution system." (CC ¶¶ 19-20.) But DT&T claims that the "tie" is that "Ticketmaster requires counterclaimant, as a condition to using Ticketmaster's system for primary ticket distribution, to agree that it will not utilize the Ticketmaster website for secondary ticket distribution . . . ." (CC ¶ 19 (emphasis added).) Whatever that it is, it is not a tying arrangement. In fact, it appears to be the exact opposite of a "tie." Assuming DT&T really purchased the tying product (i.e., "primary ticket distribution services") from Ticketmaster,[1] a 'tie' would exist only if DT&T had been forced *to purchase* the tied product (i.e., "secondary ticket distribution services") from Ticketmaster in order to be allowed to purchase the tying product. Instead, DT&T claims that the purchase of the tying product (primary services) from Ticketmaster was conditioned on its agreement not to purchase the alleged tied product (secondary services) from Ticketmaster. While there are many other problems with DT&T's tying claim, this one is fatal. As DT&T has not alleged any purchase of any tied product, its tying claim fails as a matter of law. Accordingly, Ticketmaster's Motion is GRANTED as to Count One of DT&T's Counterclaim, and that claim is DISMISSED, with leave to amend.

**II.   Monopolization and Attempted Monopolization (Sherman Act, Section 2)**

DT&T asserts two causes of action under Section 2 of the Sherman Act. To the extent these causes of action are comprehensible at all, DT&T appears to be claiming that Ticketmaster: (1) "possesses monopoly power in the market for primary [ticket] distribution services" (CC ¶ 24); and is (2) "attempting to monopolize the market for primary ticket distribution services" (CC ¶ 28).

In order to make out a claim for either monopolization or attempted monopolization, a claimant must allege a "relevant product market." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038,

---

[1] This is not a particularly safe assumption given DT&T's other allegations, which suggest that DT&T purchased tickets from Ticketmaster, not ticket distribution services. (CC ¶ 4 (DT&T "secures some of the tickets it resells from Ticketmaster's website"); CC ¶ 6 ("primary ticket distribution services [are] purchased by major venues," which are "those events, usually live entertainment or sports, where . . . the seating capacity and numbers of tickets sold are sufficiently large as to require the use of sophisticated ticketing computer capability by an established ticket services provider").)

Case 2:07-cv-01092-ABC-JC   Document 51   Filed 03/10/08   Page 4 of 6   Page ID #:139

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

1044 (9th Cir. 2008) ("The first question we must address is whether Newcal's antitrust claims allege any legally cognizable 'relevant market.'"); Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1104 (9th Cir. 1999) (affirming dismissal of attempted monopolization claim based in part on failure to "sufficiently identify the markets affected by Defendants' alleged antitrust violations," because "[m]onopolization claims can only be evaluated with reference to properly defined geographic and product markets"); Forsyth v. Humana, Inc., 114 F.3d 1467, 1477 (9th Cir. 1997) (holding that resolution of both actual monopolization and attempted monopolization claims "is dependent upon a definition of the relevant market").

Having alleged that the relevant product market is the market for "primary ticket distribution services," DT&T's claims must therefore be evaluated with respect to that market. Thus, the question framed by the Counterclaim is essentially whether Ticketmaster has harmed, or is likely to harm, competition in the market for primary ticket distribution services. But for DT&T to assert such claims, it must have standing to do so. Ticketmaster argues it does not, and the Court finds that, as the allegations currently stand, Ticketmaster is correct.

To pursue its claims, DT&T must have "antitrust standing." Glen Holly Entertainment Inc. v. Tektronix Inc., 352 F.3d 367, 371 (9th Cir. 2003); American Ad Mgmt., Inc. v. General Tel. Co., 190 F.3d 1051, 1054 (9th Cir. 1999). One necessary factor in showing antitrust standing is "antitrust injury." Glen Holly, 352 F.2d at 371; American Ad Mgmt., 190 F.3d at 1055. "Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained. Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." American Ad Mgmt., 190 F.3d at 1057.

As noted, the market where competition is allegedly being restrained is the market for "primary ticket distribution services." DT&T, however, claims only that it is "engaged in the secondary ticket distribution business," in "the separate and distinct market for secondary ticket distribution services." (CC ¶¶ 4, 14.) It does not allege that it participates in the market for "primary ticket distribution services," which it claims are "purchased by major venues" promoting "those events, usually live entertainment or sports, where . . . the seating capacity and numbers of tickets sold are sufficiently large as to require the use of sophisticated ticketing computer capability by an established ticket services provider . . . ." (CC ¶ 6.)

Nor does DT&T claim in its opposition brief that it participates in the market for "primary ticket distribution services." Rather, it claims that it "competes with Ticketmaster in the secondary market." (Opp'n at 5 (citing CC ¶ 14, which defines the "second relevant product market" as "the market for secondary ticket distribution services which consists of the resale of a ticket of a particular venue to members of the public where the ticket has already been assigned by a primary ticket distribution system").) Apparently, DT&T now prefers to pursue a claim premised on injury to competition in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

secondary market, not the primary market, arguing that Ticketmaster has used its monopoly power in the primary market to try to acquire monopoly power in the secondary market in which DT&T competes. While there is some hint in the Counterclaim that DT&T may have meant to pursue this theory all along, it did not succeed in setting forth consistent allegations. Fortunately for DT&T, it will have one more chance to try to do so.

However, the Court feels compelled to point out that the monopoly leveraging theory DT&T now appears to favor is not without its problems. Both in its Counterclaim and its opposition brief, DT&T evidences some confusion as to what product is at issue in the alleged "market for secondary ticket distribution services": tickets, or ticket distribution services. The two are not the same, and while one entity could theoretically sell both, tickets and ticket distribution services are not "economic substitutes" that would belong in the same product market for antitrust purposes. In amending, DT&T should remain cognizant of this distinction.

Further, DT&T's argument, at a certain fundamental level, just does not make sense. It claims that to the "extent secondary ticket sellers, taken collectively, are able to buy sufficient quantities of tickets which they can usually resell at prices over the face value of the ticket, they threaten Ticketmaster with competition in sales to consumers . . . ." (CC ¶ 15.) Apparently DT&T's theory is that the more tickets that ticket brokers can purchase from Ticketmaster, the more consumers have to buy tickets from brokers instead of from Ticketmaster, paying higher prices than they would have paid if they had been able to buy tickets from Ticketmaster in the first place, which they might have been able to do had the brokers not bought the tickets first. Somehow, this does not seem like the best way to maximize consumer welfare. Perhaps DT&T's next set of allegations will be more convincing.

In any event, because DT&T does not even attempt to argue that it has standing in the market for primary ticket distribution services -- which, regardless of what it meant to do, is the market it actually identified in its Counterclaim as the relevant product market for its two Section 2 claims -- its claims cannot survive. Accordingly, Ticketmaster's Motion is hereby GRANTED as to Counts Two and Three of DT&T's Counterclaim, and those claims are DISMISSED, with leave to amend.

**CONCLUSION**

For the reasons set forth above, Ticketmaster's motion to dismiss is GRANTED. DT&T's Counterclaim is hereby DISMISSED, with leave to amend. DT&T shall have 30 days from the date of this order in which to file any further amended counterclaims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1092 ABC (JCx) | Date | March 10, 2008 |
|---|---|---|---|
| Title | Ticketmaster LLC v. Designer Tickets & Tours, Inc., et al. | | |

  :  

Initials of Preparer   DA