1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  CHAD S. HUMMEL (Bar No. CA 139055)
   chummel@manatt.com
4  NOEL S. COHEN (Bar No. CA 219645)
   ncohen@manatt.com
5  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
6  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
7  Facsimile:   (310) 312-4224

8  Attorneys for *Plaintiff and Counterclaim-Defendant*
   TICKETMASTER L.L.C.

9

10                UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DESIGNER TICKETS and TOURS, INC., etc., et al.,<br><br>　　　　Defendant. | Case No. CV 07-1092 ABC (JCx)<br><br>**NOTICE OF NEW NINTH CIRCUIT AUTHORITY RE: PENDING MOTION TO DISMISS** |
| DESIGNER TICKETS & TOURS, INC.,<br><br>　　　　Counterclaimant,<br><br>　　vs.<br><br>TICKETMASTER L.L.C., a Virginia limited liability company,<br><br>　　　　Counterclaim-Defendant. | |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF NEW NINTH CIRCUIT
AUTHORITY RE: PENDING MOTION TO
DISMISS

1  **TO THIS HONORABLE COURT AND ALL PARTIES HEREIN**:

2  In connection with the pending Motion to Dismiss, attached as Exhibit A is
3  the March 7, 2008 opinion in *Kendall v. Visa U.S.A., Inc.*, 2008 WL 613924 (9th
4  Cir. 2008).

6  Dated: March 10, 2008                MANATT, PHELPS & PHILLIPS, LLP

8                                        By: _____
                                          Noel S. Cohen
9                                         Attorneys for *Plaintiff and
                                          Counterclaim-Defendant*
10                                        TICKETMASTER L.L.C.

12  41216103.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2                                   NOTICE OF NEW NINTH CIRCUIT
                                                      AUTHORITY

# EXHIBIT A

Westlaw.

--- F.3d ----  
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))  
**(Cite as: --- F.3d ----)**

Page 1

**H**  
Kendall v. Visa U.S.A., Inc.  
C.A.9 (Cal.),2008.  
Only the Westlaw citation is currently available.  
United States Court of Appeals,Ninth Circuit.  
Sheri L. **KENDALL**, doing business as Bala Hair Salon, James Maser, and Maiz Holding Co.,  
Plaintiffs-Appellants,  
v.  
VISA U.S.A., INC., Mastercard International, Inc., Bank of America, N.A., Wells Fargo Bank, N.A., and U.S. Bank, N.A., Defendants-Appellees.  
No. 05-16549.

Argued and Submitted June 11, 2007.  
Filed March 7, 2008.

Richard J. Archer, Archer & Hanson, Occidental, California and James A. Kopcke, Golden Kopcke, San Francisco, CA, for the appellants.  
Marie L. Fiala, Heller Ehrman, San Francisco, CA; Robert Vizas, Arnold & Porter, LLP, San Francisco, CA; Jay N. Fastow, Debra J. Pearlstein, Gianluca Morello, Weil, Gotshal & Manges, LLP, New York, NY; Keila D. Ravelo, Wesley R. Powell, Hunton & Williams, New York, NY; Eileen Ridley, Foley & Lardner, LLP, San Francisco, CA; Maurice J. McSweeney, Michael Luedner, Foley & Lardner, Milwaukee, WI; Daniel M. Wall, Joshua N. Holian, Latham & Watkins, San Francisco, CA; and Sonya D. Winner, Tara M. Steeley, Covington & Burling, San Francisco, CA.

Appeal from the United States District Court for the Northern District of California; Jeffrey S. White, District Judge, Presiding. D.C. No. CV-04-04276-JSW.

Before MICHAEL DALY HAWKINS, A. WALLACE TASHIMA, and CARLOS T. BEA, Circuit Judges.

**OPINION**

BEA, Circuit Judge:

*1 This case concerns the pleading requirements to state a claim for antitrust violations under Section 1 of the Sherman Act following the Supreme Court's recent pronouncement in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-66 (May 21, 2007).

Appellants are a group of businesses who offer their customers the convenience of paying with a credit card, at a cost to the business. Appellees are composed of two groups: (1) MasterCard and Visa (referred to as "Consortiums") and (2) Bank of America, N.A.; Wells Fargo Bank, N.A.; and U.S. Bank, N.A. (referred to as "Banks").[FN1]

> FN1. The district court also dismissed allegations against defendant, CitiGroup, under Federal Rule 12(f). Appellants do not appeal this ruling.

Appellants sued appellees under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26, for antitrust violations, alleging appellees conspired with each other to set the fees charged to merchants, such as appellants, for payment of credit card sales. The district court dismissed appellants' First Amended Complaint without leave to amend for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). We hold that Appellants' First Amended Complaint failed to plead evidentiary facts sufficient to establish a conspiracy, and we affirm.

I. A Typical Credit Card Transaction

To understand this case, it is helpful to begin with an example of a credit card transaction:[FN2] A customer purchases dinner for $100 from a merchant using his Visa credit card. The merchant accepts the credit card from the customer, then electronically presents the card's data to the merchant's bank (the "acquiring bank"), or sometimes to a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit ___A___ Page ___3___

--- F.3d ----
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

Page 2

third party processing firm, for verification and processing. The acquiring bank presents the data to Visa, which in turn contacts the bank that issued the credit card to the customer (the "issuing bank") to check the customer's bank account or credit line. The issuing bank then tells Visa to authorize or decline the transaction, and Visa relays this message to the acquiring bank, which notifies the merchant. Thanks to modern computers, this all typically happens while the customer finishes his coffee.

> FN2. Our hypothetical is taken from the declaration of William Sheedy, Executive Vice President of Visa, and from Visa's brief. No contrary evidence appears in the record.

If the transaction was authorized, the merchant eventually delivers the credit card slip to the acquiring bank and asks the sum be credited to the merchant's bank account. If this had been a personal check from the customer, the acquiring bank might put a hold on the check until the customer's bank had paid it. The acquiring bank might also charge a fee for this service. Because this is a Visa receipt, and Visa's credit is good, the acquiring bank credits the merchant's account before the customer pays his Visa bill at the end of the month.

The acquiring bank, however, will not credit the merchant's account the full $100. Instead, the acquiring bank will deduct a "merchant discount fee" of around three percent. Thus, the acquiring bank will credit the merchant's account only $97, keeping $3 as a fee. This merchant discount fee is negotiable. The acquiring bank might not charge this fee if the merchant leaves a large amount of money in its account which the bank can lend out.

*2 The acquiring bank then delivers the credit card receipt to the issuing bank, via Visa. The issuing bank pays the acquiring bank the original amount minus a fee of around two percent, or $98, because the issuing bank knows that when it presents the $100 receipt to Visa, Visa will deduct a $2 fee as well. The difference between the credit card receipt, $100, and the amount the issuing bank pays the acquiring bank, $98, is known as the "interchange fee" or "interchange reimbursement fee." The issuing bank makes nothing in its transaction with Visa, but profits, in part, by being one of the owners of Visa through an association.[FN3]

> FN3. The district court found the issuing bank keeps the interchange fee instead of Visa, but makes no mention of how the Consortiums make a profit. Either version of the transaction (either Visa keeps the interchange fee or the issuing bank keeps the interchange fee) results in the same analysis of this case.

At the end of the transaction, the customer and his family are fed, for which he pays $100 to the issuing bank, plus any late fees and interest. The merchant receives $97 for the dinner, for which it charged the customer $100. The acquiring bank receives $98 from the issuing bank, credits the merchant's account $97, and keeps $1 as a merchant discount fee. The issuing bank receives $98 from Visa, but gives all $98 to the acquiring bank. The issuing bank gets only a portion of Visa's $2 profit as one of the many owners of Visa through an association but, most importantly, keeps any late fees and interest the customer must pay if the customer does not pay his account on time, in full, according to his contract with the issuing bank. Visa receives $100 from the customer, pays the issuing bank $98, and keeps $2 as an interchange fee. The difference between what the two banks keep represents the difference between the greater risk the issuing bank and Visa have that the consumer will not pay compared to the lesser risk the acquiring bank has that the issuing bank will not pay.

In this case, appellants allege the appellees' actions in setting the amount of the merchant discount fee and interchange fee constitute violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26, because appellees conspired to set the amounts charged. The district court dismissed appellants' original com-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A  Page 4

--- F.3d ---- Page 3
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

plaint with leave to amend for, *inter alia,* failure to allege specific facts of such conspiracy. The district court then allowed appellants to conduct discovery so they would have the facts they needed to plead an antitrust violation in their amended complaint. Appellants deposed Steven Jonas for MasterCard and William Sheedy for Visa. They then used the facts learned in those depositions to form the allegations in their First Amended Complaint.[FN4] The district court then granted appellees' motions to dismiss the First Amended Complaint, without leave to amend, for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

> FN4. Appellants did not depose any representatives of the Banks, nor do they contend on appeal they needed further discovery to plead their case.

II. Section 1 of the Sherman Act

We review the dismissal of a complaint under Rule 12(b)(6) *de novo. Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n,* 884 F.2d 504, 507 (9th Cir.1989).

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."15 U.S.C. § 1. The Supreme Court recently clarified what a plaintiff must plead to state a claim under § 1:

*3 [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level.... In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage: it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.... [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice.

*Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-66 (May 21, 2007).[FN5] This is because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case. *Id.* at 1966-67.

> FN5. At least for the purposes of adequate pleading in antitrust cases, the Court specifically abrogated the usual "notice pleading" rule, found in Federal Rule of Civil Procedure 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47 (1957), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Bell Atlantic,* 127 S.Ct. at 1964, 1968.

"[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation-for example, identifying a written agreement or even a basis for inferring a tacit agreement, ... but a court is not required to accept such terms as a sufficient basis for a complaint."*Id.* at 1966(quoting *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 56(1st Cir.1999)). The Court also suggested that to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a "specific time, place, or person involved in the alleged conspiracies" to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin. *Id.* at 1970 n. 10.A bare allegation of a conspiracy is almost impossible to de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A Page 5

--- F.3d ----
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

Page 4

fend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition. *Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507(9th Cir.1989); *see also Bell Atlantic*, 127 S.Ct. at 1964-66.

In *Bell Atlantic*, the Supreme Court found allegations that the defendant telephone companies "have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets and have agreed not to compete with one another and otherwise allocated customers and markets to one another" insufficient because no evidentiary facts were pleaded which could prove the conspiracy. *Id.* at 1963."Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations."*Id.* at 1970(footnote omitted). Here, appellants pleaded only ultimate facts, such as conspiracy, and legal conclusions. They failed to plead the necessary evidentiary facts to support those conclusions.

A. Allegations Against the Banks

*4 Appellants allege that: (1) each Bank defendant "participates in the management of and has a proprietary interest in" the Consortiums; (2) the Banks charge appellants "the amount of the interchange rate fixed by the Consortiums as the merchant discount fee"; (2) the Banks adopt the interchange fees set by the Consortiums; (3) the acquiring banks "knowingly, intentionally and actively participated in an individual capacity with the Consortiums in charging the fixed minimum merchant discount fees"; and (4) there is an agreement among all financial institutions to charge a minimum merchant discount fee set by the Consortiums.

Appellants do not allege any facts to support their theory that the Banks conspired or agreed with each other or with the Consortiums to restrain trade. Although appellants allege the Banks "knowingly, intentionally and actively participated in an individual capacity in the alleged scheme" to fix the interchange fee or the merchant discount fee, this allegation is nothing more than a conclusory statement. There are no facts alleged to support such a conclusion. *See id.* at 1970.Even after the depositions taken, the complaint does not answer the basic questions: who, did what, to whom (or with whom), where, and when?

Regarding the allegation that the Banks conspired to fix the interchange fee, merely charging, adopting or following the fees set by a Consortium is insufficient as a matter of law to constitute a violation of Section 1 of the Sherman Act. *Id.* at 1964-66;*see also Kline v. Coldwell Banker & Co.*, 508 F.2d 226 (9th Cir.1974). In *Kline,* we held that membership in an association does not render an association's members automatically liable for antitrust violations committed by the association. *Kline,* 508 F.2d at 232. Even participation on the association's board of directors is not enough by itself.

A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit _A_ Page _6_

--- F.3d ----  
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))  
**(Cite as: --- F.3d ----)**

Page 5

*Bell Atlantic*, 127 S.Ct. at 1966 (citation omitted).

Appellants failed to plead any evidentiary facts beyond parallel conduct to prove their allegation of a conspiracy. Accordingly, the district court correctly dismissed the complaint against the Banks.

B. Allegations Against the Consortiums

The Supreme Court in *Illinois Brick v. Illinois*, 431 U.S. 720, 736 (1977), held "indirect purchasers" may not recover antitrust damages. The Court held that permitting suits by indirect third parties:

*5 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness.

*Illinois Brick*, 431 U.S. at 737.

In *Illinois Brick*, an antitrust treble-damages action was brought by the State of Illinois and local government entities alleging that concrete block manufacturers had engaged in a price-fixing conspiracy. *Id.* at 726-27. The government entities had contracted with general contractors who in turn hired masonry sub-contractors, who bought the concrete blocks for installation in government projects. *Id.* at 735. The Supreme Court held that only a direct purchaser of the concrete blocks (the masonry sub-contractor who purchased the concrete blocks) is a party "injured in his business or property" entitled to sue under Section 1 of the Sherman Act, not another party in the chain of manufacture or distribution. *Id.* at 729, 735-37. Courts are not permitted to determine "what portion of [an] illegal overcharge was 'passed on' ... and what part was absorbed by the middlemen" because such an analysis would "involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade." *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir.1980).

Appellants allege that the Consortiums set both the merchant discount fee and the interchange fee. Appellants allege that by setting the interchange fee that the Consortiums charge the issuing bank, the Consortiums establish a minimum amount for the merchant discount fee. Appellants have no contractual relationship with the Consortiums directly, nor are they charged the interchange fee directly. In *Illinois Brick*, the State's contractors who bought the brick to be installed were the middlemen. Here, the acquiring and issuing banks are the middlemen. Thus, with respect to the interchange fee, appellants run squarely into the *Illinois Brick* wall. *Illinois Brick*, 431 U.S. at 746.

Appellants also allege the Consortiums indirectly establish the minimum merchant discount fee the Banks charge Merchants. Appellants allege that because the interchange fee is one of the cost factors an acquiring bank considers when determining the merchant discount fee, the interchange fee effectively sets a floor for each bank's merchant discount fee. In this sense, the Consortiums indirectly establish the merchant discount fee, much as the cost of eggs sets a floor for the price of an omelette on a menu. Just like the restauranteur, the banks charge the merchant a higher price than their cost of business to make a profit. This behavior suggests a rational business decision, not a conspiracy. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 102 (2d Cir.2005) ("Economics demands that the [merchant] discount fee [for credit card transactions] be greater than the interchange fee the acquiring institution must pay to the card-issuing institution."). Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws. *Bell Atlantic*, 127 S.Ct. at

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit ___A___ Page ___7___

--- F.3d ----  
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))  
(Cite as: --- F.3d ----)

Page 6

1964-66 & n. 5 (explaining that an antitrust complaint must cross the threshold not only between "conclusory and factual" but also between "the factually neutral and the factually suggestive"). Further, this allegation is barred by *Illinois Brick* to the extent that the Consortiums do not directly set the merchant discount fee; the acquiring bank sets that fee.

*6 In an attempt to circumvent *Illinois Brick*, appellants also allege the Consortiums directly conspired with the Banks to set the merchant discount fee. Appellants contend they are entitled to sue the Consortiums as co-conspirators under the exception to *Illinois Brick* found in *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1213-14 (9th Cir.1984). Appellants, however, simply allege the Consortiums are coconspirators, without providing any facts to support such an allegation, despite having deposed executives from both MasterCard and Visa. Here again, the district court was not required to accept appellants' conclusion that the Consortiums were co-conspirators of the Banks without any evidentiary facts alleged to support such conclusion. *See Bell Atlantic*, 127 S.Ct. at 1964-66(holding the district court is not required to accept as true conclusory allegations of law or legal conclusions couched as factual allegations); *see also Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 216 (1990) (holding the exception to *Illinois Brick* did not apply even where the direct purchaser almost certainly passed on the entire cost of an alleged overcharge to the indirect purchaser because no facts were alleged to support the allegation of conspiracy).

Importantly, appellants do not allege any facts showing the Consortiums have any direct control over the merchant discount fee the acquiring bank chooses to charge, or not charge, the merchant. In fact, appellants have expressly excluded from the putative class of plaintiffs "those merchants who negotiate merchant discounts directly with VISA and/or MASTERCARD or receive payments directly from them."

Appellants also attempt to rely upon *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1145-46 (9th Cir.2003), in which we held that indirect purchasers can sue for damages if there is no "realistic possibility that the direct purchaser will sue" over the antitrust violation. But appellants failed to allege any facts establishing that there is no realistic possibility the Banks will not sue the Consortiums.

Appellants' allegations that the Consortiums charge different interchange fees for different types of merchants also fail to state a violation for Section 1 of the Sherman Act because appellants do not allege they compete with these other unidentified merchants, or that their trade was in any way injured by such practices. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763-64 (1984).

C. Issue Preclusion

To cure the deficiencies in their failure to plead the necessary evidentiary facts, appellants attempt to assert issue preclusion to rely upon the factual findings in *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir.2003). Whether issue preclusion applies is a legal question we review *de novo*. *See Frank v. United Airlines, Inc.*, 216 F.3d 845, 849-50(9th Cir.2000).

Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."*United States Internal Revenue Serv. v. Palmer (In re Palmer)*, 207 F.3d 566, 568 (9th Cir.2000). The burden is on the party seeking to rely upon issue preclusion to prove each of the elements have been met. Here, appellants have not shown any of the elements of issue preclusion have

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit __A__ Page __8__

--- F.3d ----
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))
(Cite as: --- F.3d ----)

Page 7

been met. The Second Circuit's decision in *Visa* involved exclusivity rules which barred member banks from issuing American Express or Discover cards; any discussion of interchange fees or merchant fees in that opinion was provided as background only and was irrelevant to the issue actually decided in that litigation. *See* 344 F.3d at 235, 237.FN6

> FN6. In fact, the attorneys representing appellants here also sued these same defendants in *Reyn's Pasta Bella, LLC v. Visa, USA, Inc*., 442 F.3d 741 (9th Cir.2006). We rejected the argument that issue preclusion applied because, as is the case here, the appellants failed to allege the required facts.

III. Section 16 of the Clayton Act

*7 Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws...." 15 U.S.C. § 26. Section 16 does not furnish an independent cause of action. Rather, it allows the court to fashion relief upon a showing of a separate violation of the antitrust laws. *See, e.g., Catlin v. Washington Energy Co.,* 791 F.2d 1343, 1350(9th Cir.1986). Because appellants failed to state a claim under Section 1 of the Sherman Act, their claim under Section 16 of the Clayton Act, predicated upon a violation Section 1 of the Sherman Act, is barred. *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109 (1986) (threatened antitrust injury is a prerequisite to equitable relief).

The district court properly dismissed appellants' complaint under the pleading standards recently reinforced in *Bell Atlantic* and the indirect purchaser rule in *Illinois Brick.* Accordingly, we affirm.

IV. Leave to Amend the Complaint

Finally, plaintiffs seek leave to file a Second Amended Complaint, although they fail to state how they would amend the Complaint if given leave. Normally, we would agree that when the Supreme Court alters the pleading requirements for a cause of action, such as it did in *Bell Atlantic*, plaintiffs should be allowed leave to amend their complaint to meet the new standard. In this particular case, however, we think such leave would be futile. Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment. *Eminence Capital, LLC v.. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003) (per curiam).

The district court in this case was particularly prescient in its original order granting the Bank Defendants' motion to dismiss with leave to amend. The district court dismissed appellants' original complaint with leave to amend and allowed appellants to conduct discovery so they would have the facts they needed adequately to plead an antitrust violation in their First Amended Complaint.

In its original dismissal order, the district court relied upon the pleading standards set forth in *Papasan v. Allain,* 478 U.S. at 286(holding courts are not required to accept as true conclusory allegations of law or legal conclusions couched as factual allegations). This is the very same standard and reasoning that the Supreme Court relied upon in *Bell Atlantic* in articulating the pleading standards for antitrust complaints. Accordingly, appellants had already been put on notice once before of the same defects that led to the dismissal of their First Amended Complaint.

Appellants were already granted leave to amend once and were given an opportunity to conduct discovery to discover the facts needed to plead their causes of action, yet their First Amended Complaint contained the same defects as their original Complaint. Appellants fail to state what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts. Accordingly,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit _A_ Page _9_

--- F.3d ----  
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))  
**(Cite as: --- F.3d ----)**

Page 8

amendment would be futile.

**\*8 AFFIRMED.**[FN7]

    FN7. All other pending motions are denied.

C.A.9 (Cal.),2008.  
Kendall v. Visa U.S.A., Inc.  
--- F.3d ----, 2008 WL 613924 (C.A.9 (Cal.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A Page 10